Exhibit 6

#01039823 APR 03 2001

Liber-33526 Page-857
201134331 4/03/2001
Bernard J. Youngblood, Wayne Co. Register of Deeds

NETCO
11585 FARMINGTON RD.
LIVONIA, MI 48150

[Space Above This Line For Recording Data]

State of Michigan FHA Case No.

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

### THIS IS A FUTURE ADVANCE MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **MARCH 21, 2001**. The mortgagor is
**ALVIN JOHNSON**

whose address is **6819 COVERT STREET,
DETROIT, MICHIGAN 48212** ("Borrower").
This Security Instrument is given to
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION**
, which is
organized and existing under the laws of **THE STATE OF DELAWARE**, and whose address is
**7840 ROSWELL ROAD BUILDING 300 SUITE 340, ATLANTA, GEORGIA 30350**
("Lender").
Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future
advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security
Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as
this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications
of the Note, UP TO A MAXIMUM PRINCIPAL AMOUNT OF
**EIGHTY FIVE THOUSAND FIVE HUNDRED AND 00/100** ---------------------------------------
-----------------------------------------------------------------------------------
(U.S. $ 85,500.00 ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The
full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**FEBRUARY 10 , 2085** . For this purpose, Borrower does hereby mortgage, warrant, grant and convey to
Lender, with power of sale, the following described property located in **WAYNE** County,
Michigan:

80XC : 01/97 Page 1 of 8

R MTG 34 4R 8pgs S DR NETCO

THE EAST 12 FEET OF LOT 236 AND THE WEST 27 FEET OF LOT 235, PLAT OF NEWKIRK AND DARLING'S SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED IN LIBER 13, PAGE 69 OF PLATS, WAYNE COUNTY, RECORDS.

which has the address of  6819 COVERT STREET
[Street]

**DETROIT** , **MICHIGAN**  48212  ("Property Address");
[City]  [State]  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.
9. **Grounds for Acceleration of Debt.**
   (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
      (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or
      (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).
   (b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:
      (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or
      (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or
      (iii) An obligation of the Borrower under this Security Instrument is not performed.
   (c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.
   (d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
      (i) Correct the matter which resulted in the Security Instrument coming due and payable; or
      (ii) Pay the balance in full; or
      (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or
      (iv) Provide the Lender with a deed in lieu of foreclosure.
   (e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.
   (f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.
10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.
11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

04XA : 11/96    Page 4 of 8

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

   (i) This Security Instrument is assigned to the Secretary; or

   (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

   (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

   (ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** (Not Applicable)

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Paragraph 16. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **5.5100 %** which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **JUNE, 2001**, and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FIFTEEN AND 510/1000** percent ( **15.51000 %**).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.



82XC : 05/97                    Page 7 of 8

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider  ☐ Shared Appreciation Rider  ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Dallis Allen_
_Doris Allen_

_Alvin Johnson_ (Seal)
ALVIN JOHNSON                                      -Borrower

_Daniel DeHaven_

_____ (Seal)
                                                    -Borrower

[Space Below This Line For Acknowledgment]

STATE OF MICHIGAN ,                         WAYNE COUNTY SS:

The foregoing instrument was acknowledged before me this **MARCH 21, 2001** , by
**ALVIN JOHNSON**

_(Signed)_ DANIEL C. DEHAVEN
Notary Public, Macomb County, MI
My Commission Expires 04/13/2003        (Title)
Acting in
Wayne County

This instrument was prepared by:

Name: _Sharon Financial Freedom_

Mailing Address: _7840 Roswell Rd, Bldg 300, Ste 340_
_Atlanta, GA 30350_

**RECORD AND RETURN TO:**
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION**
**7840 ROSWELL ROAD BUILDING 300 SUITE 340**
**ATLANTA, GEORGIA 30350**
83XC : 06/97                          Page 8 of 8



Bernard J. Youngblood
Wayne County Register of Deeds
January 27, 2010  11:24 AM
Liber 48325 Page 1338-1338
#2010027797  ASG  FEE: $15.00

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, WHOSE ADDRESS IS 190 TECHNOLOGY PARKWAY SUITE 100, NORCROSS, GA 30092**, by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, P.O. BOX 2026, FLINT, MI 48501-2026, (ASSIGNEE) [FINANCIAL FREEDOM ACQUISITION LLC, 190 TECHNOLOGY PARKWAY SUITE 100, NORCROSS, GA, 30092].**
Said mortgage made on 03/21/2001, by: **ALVIN JOHNSON** to **FINANCIAL FREEDOM SENIOR FUNDING CORPORATION** and recorded in office of the Register of Deeds of WAYNE County, Michigan, in Book 33526, Page 857 Doc#

THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FINANCIAL FREEDOM SENIOR FUNDING CORPORATION.
upon the property situated in said State and County, to wit:
THE EAST 12 FEET OF LOT 236 AND THE WEST 27 FEET OF LOT 235, PLAT OF NEWKIRK AND DARLING'S SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED IN LIBER 13, PAGE 69 OF PLATS, WAYNE COUNTY RECORDS.
also known as 6819 COVERT STREET, DETROIT, MI 48212

dated: 01/09/2010
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION**

BY: _____
**DHURATA DOKO**
**VICE PRESIDENT**

STATE OF FLORIDA
COUNTY OF PINELLAS

On 01/09/2010, before me appeared DHURATA DOKO, to me personally known, who, being by me duly sworn, did say that he/she is the/an VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION and that said instrument was signed on behalf of said corporation.

_____
CRYSTAL MOORE  Notary Public

CRYSTAL MOORE
Notary Public, State of Florida
Commission # DD 927242
Expires September 23, 2013
Bonded Through National Notary Assn.

Document Prepared By: Jessica Fretwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
When Recorded Return To:  Financial Freedom
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

formS/FRMMW1

2015328186   L: 52420 P: 264   ASG
08/24/2015 06:35:23 PM  Total Pages: 3
Bernard J. Youngblood, Register of Deeds - Wayne County, MI
ELECTRONICALLY RECORDED

Prepared by, Recording Requested By and Return to:
John Heywood
Brown & Associates
2316 Southmore
Pasadena, TX 77502

# ASSIGNMENT OF MORTGAGE

FHA Case Number:

***FOR VALUE RECEIVED***, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS, does hereby assign and transfer to CIT BANK, N.A., ITS SUCCESSORS AND ASSIGNS, forever and without recourse, whose address is 2900 ESPERANZA CROSSING, AUSTIN, TX 78758, all its right, title and interest in and to a certain Mortgage from ALVIN JOHNSON to FINANCIAL FREEDOM SENIOR FUNDING CORPORATION for $85,500.00, dated 3/21/2001 of record on 4/3/2001 in Book 33526 Page 857 as Document 201134331, in the WAYNE County Register of Deeds Office, State of MICHIGAN.

Property Address: 6819 COVERT STREET, DETROIT, MICHIGAN 48212
Legal description: SEE LEGAL DESCRIPTION

Executed this ___AUG 1 8 2015___.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS

By: _/s/ M. Davis_
     MELINDA LEA DAVIS
Title: ASSISTANT SECRETARY

STATE OF TEXAS

COUNTY OF TRAVIS

This instrument was acknowledged before me on ___AUG 18 2015___ by MELINDA LEA DAVIS the ASSISTANT SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A DELAWARE CORPORATION, AS NOMINEE FOR FINANCIAL FREEDOM ACQUISITION LLC, ITS SUCCESSORS AND ASSIGNS on behalf of said corporation.

_Christine Fuller_
Notary Public in and for the State of Texas
Notary's Printed Name: CHRISTINE FULLER
My Commission Expires: 9/19/2017
Mortgage for $85,500.00 dated 3/21/2001

CHRISTINE FULLER
My Commission Expires
September 19, 2017

## LEGAL DESCRIPTION

THE EAST 12 FEET OF LOT 236 AND THE WEST 27 FEET OF LOT 235, PLAT OF NEWKIRK AND DARLING'S SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED IN LIBER 13, PAGE 69 OF PLATS, WAYNE COUNTY, RECORDS.

# ADJUSTABLE RATE NOTE
# (HOME EQUITY CONVERSION)

FHA Case No.

MARCH 21, 2001

6819 COVERT STREET, DETROIT, MICHIGAN 48212
[Property Address]

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated MARCH 21, 2001 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on FEBRUARY 10, 2085. Interest will be charged on unpaid principal at the rate of FIVE AND 510/1000 percent (5.5100%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

(B) Place

Payment shall be made at FINANCIAL FREEDOM SENIOR FUNDING CORPORATION,
7840 ROSWELL ROAD BUILDING 300 SUITE 340,
ATLANTA, GEORGIA 30350, or any such other place as Lender may designate in writing by notice to Borrower.

(C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES

(A) Change Date

The interest rate may change on the first day of JUNE, 2001, and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

(B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

(C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of ONE AND 200/1000 percentage points (1.20000%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

(D) Limits on Interest Rate Changes

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above FIFTEEN AND 510/1000 percent (15.51000%).

(E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

30XA : 11/98    Page 1 of 3

(F) Effective Date of Changes

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

(A) Death or Sale

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(B) Other Grounds

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

(D) Trusts

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

(A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

(B) Relationship of Secretary Payments to this Note

Payments made by the Secretary shall be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
ALVIN JOHNSON                    -Borrower

_____ (Seal)
                                 -Borrower

# ALLONGE

LOAN NUMBER: ███

BORROWER(S): Johnson, Alvin

PROPERTY ADDRESS: 6819 Covert Street
Detroit, MI 48212

NOTE/LOAN DATE: 3/21/2001

## PAY TO THE ORDER OF:

## WITHOUT RECOURSE

COMPANY NAME: Financial Freedom Senior Funding Corporation
A Subsidiary of IndyMac Bank, F.S.B.

SIGNATURE: *Melinda Davis*

PRINTED NAME: Melinda Davis

TITLE: Attorney-in-Fact

Loan No.: ███

FF Form 580-3O
Version 001-3/2012